# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

RACHEL S.,

    Plaintiff,

  v.

ANDREW M. SAUL,
Commissioner of Social Security,

    Defendant.

Case No. 19 C 8465

Magistrate Judge Sunil R. Harjani

## MEMORANDUM OPINION AND ORDER

Plaintiff Rachel S.[1] seeks judicial review of the final decision of the Commissioner of Social Security finding her ineligible for Disability Insurance Benefits under the Social Security Act. The Commissioner has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, the Commissioner's motion [25] is granted, and the ALJ's decision is affirmed.

## BACKGROUND

Rachel was laid off from her job as an executive assistant in September 2013 due to cutbacks. (R. 44, 228, 839). She subsequently began experiencing lower back pain, and in December 2015, an MRI of Rachel's lumbar spine revealed multilevel, mild bulging discs. *Id.* at 535. In addition to Rachel's lower back issues, the medical record shows that she has experienced morbid obesity, anxiety, pulmonary emboli, acute appendicitis, and asthma. *Id.* at 517, 568, 574, 581, 584, 635, 643, 680. Rachel's treatment for those conditions has included office visits, the insertion of a spinal stimulator, spinal epidural injections, the obtaining of medical imaging, and

---

[1] Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff by her first name and the first initial of her last name or alternatively, by first name.

prescription medications, such as Xarelto, clonazepam, lidocaine patches, gabapentin, sertraline, and Symbicort. *See, e.g.*, *id.* at 267, 360, 535, 587-590, 878, 929, 937, 943, 972.

Rachel filed for Disability Insurance Benefits on November 9, 2016, alleging disability beginning September 15, 2013.[2] (R. 179). Rachel's claim was initially denied on January 27, 2017, and upon reconsideration on May 22, 2017. *Id.* at 80, 98. Upon Rachel's written request for a hearing, she appeared and testified at a hearing held on September 11, 2018 before ALJ Cynthia Bretthauer. *Id.* at 34-65. At the hearing, the ALJ heard testimony from Rachel and a vocational expert, Linda Gels. *Id.*

On December 12, 2018, the ALJ issued a decision denying Rachel's DIB claim. (R. 15-27). Following the five-step sequential analysis, the ALJ found that Rachel had not engaged in substantial gainful activity since December 22, 2015, the alleged onset date (step 1), and that she suffered from the severe impairments of morbid obesity, mild degenerative disc disease of the lumbar spine, status post spinal cord stimulator implant, history of pulmonary emboli, and mild asthma (step 2). *Id.* at 17-18. The ALJ then determined that Rachel's impairments did not meet or equal the severity of a list impairment (step 3). *Id.* at 20-21.

The ALJ next concluded that Rachel retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a), with the following additional restrictions:

> [s]he [] can sit six to eight hours out of the day; stand and walk at least two hours out of the day; can lift and carry frequently up to ten pounds and occasionally up to ten pounds; can frequently balance; can occasionally stoop, crawl, crouch, kneel and climb stairs and ramps; can never climb ladders, ropes or scaffolds; should avoid concentrated exposure to activities involving unprotected heights and being around moving and hazardous machinery, as well as dust,

---

[2] At the hearing, Rachel's counsel moved to amend the alleged onset date to December 22, 2015, and the ALJ granted the motion. (R. 39).

odors, fumes and gases; and should avoid concentrated exposure to temperature extremes.

(R. 21). The ALJ next determined, given this RFC, that Rachel was capable of performing her past relevant work as an administrative assistant and user support analyst supervisor (step 4). *Id.* at 25-26. The ALJ further found that there were jobs that exist in significant numbers in the national economy that Rachel could perform as well (step 5). *Id.* at 24-25. Specifically, the ALJ found that Rachel could perform the jobs of receptionist, customer complaint clerk, customer order clerk, order clerk, and document preparer. *Id.* at 26-27. Because of these determinations, the ALJ found that Rachel was not disabled. *Id.* at 27. The Appeals Council denied Rachel's request for review on October 29, 2019, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-3; *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018).

## **DISCUSSION**

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a sequential five-step inquiry, asking: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the claimant's impairment meet or equal an impairment specifically listed in the regulations? (4) Is the claimant unable to perform a former occupation? and (5) Is the claimant unable to perform any other work in the national economy? *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); 20 C.F.R. § 404.1520(a)(4). "An affirmative answer leads either to the next step, or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than

step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski*, 760 F.2d at 162 n.2.

Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009); *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In reviewing an ALJ's decision, the Court may not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the" ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and her conclusions. *See Steele v. Barnhart*, 290 F.3d 936, 938, 941 (7th Cir. 2002) (internal citation and quotations omitted); *see also Fisher v. Berryhill*, 760 Fed. Appx. 471, 476 (7th Cir. 2019) (explaining that the "substantial evidence" standard requires the building of "a logical and accurate bridge between the evidence and conclusion"). Moreover, when the ALJ's "decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940.

Rachel raises three arguments in support of her request for reversal: (1) the ALJ failed to accommodate Rachel's non-exertional limitations; (2) the ALJ failed to consider how Rachel's obesity exacerbated her functional limitations; and (3) the ALJ improperly rejected the opinion of Rachel's treating pain specialist. Doc. [20] at 6. The Court affirms the ALJ's decision because her findings are supported by substantial evidence. As the Supreme Court recently stated, "whatever

the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is 'more than a mere scintilla.'" *Biestek*, 139 S. Ct. at 1154. Here, the ALJ has sufficiently supported her conclusion with evidence, which evidence is definitely more than a mere scintilla, the Court can follow the ALJ's analysis in conducting a meaningful review, and a reasonable mind could accept the conclusion reached. Thus, this Court cannot and does not reweigh the evidence or substitute its own judgment for that of the ALJ. Accordingly, for the reasons stated below, remand is not appropriate.

## A.    Accommodation of Non-Exertional Limitations

Rachel contends that the ALJ failed to account for any of Rachel's documented non-exertional limitations. Doc. [20] at 8-11. According to Rachel, the ALJ's mental RFC error began at step two, "when the ALJ ignored the medical record, and found that Plaintiff had no more than mild limitation in her ability to concentrate, persist, or maintain pace." *Id.* at 8.

 If a claimant "has a medically determinable mental impairment, then the ALJ must document that finding and rate the degree of functional limitation in four broad areas," which includes the category of "concentration, persistence, or pace." *Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008) (citing 20 C.F.R. § 404.1520a(c)(3)). The ALJ will rate a claimant's degree of limitation in the four broad areas according to the following five-point scale: "[n]one, mild, moderate, marked, and extreme." 20 C.F.R. § 404.1520a(c)(4). If the ALJ rates a limitation as "none" or "mild," the ALJ will "generally conclude that [a claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities[.]" 20 C.F.R. § 404.1520a(d)(1). The Court reviews the ALJ's finding on the degree of a claimant's limitation for substantial evidence. *See, e.g.*, *Delong v. Saul*, 844 F. App'x 894, 900 (7th Cir. 2021); *Lockett v. Saul*, 834 F. App'x 236, 239 (7th Cir. 2020); *Underwood v. Astrue*, 430 F. App'x 532, 534 (7th Cir. 2011).

The ALJ in this case found that Rachel had a mild limitation in concentrating, persisting, or maintaining pace, (R. 19), and supported that finding with substantial evidence. The ALJ based her conclusion on her evaluation of Rachel's medical records and submissions and explained her reasoning in a manner that allows the Court to trace her reasoning. The ALJ first emphasized Rachel's testimony that she suffered from concentration issues as a result of her medication, not from depression or anxiety. *Id.* The ALJ next reasoned that the record did not indicate a significant CPP impairment. *Id.* While the ALJ acknowledged Rachel's "trouble with focus at one consultative examination," the ALJ weighed that record against others, which showed "great results" and "consistently [] normal mental status examinations over the course of the relevant period." *Id.* In addition, the ALJ highlighted Rachel's answer in her adult function report, in which she stated that she finishes what she starts. *Id.* at 19. The ALJ further gave significant weight to the opinions of the state agency physicians, who also found Rachel to have a mild CPP limitation. (*See* R. 19-20, 73, 90). Accordingly, because the ALJ's conclusion that Rachel had a mild CPP restriction was supported by "such relevant evidence as a reasonable mind might accept as adequate to support" her conclusion, *Biestek*, 139 S. Ct. at 1154, the ALJ's CPP finding is supported by substantial evidence.

Rachel takes aim at the ALJ's weighing of the evidence and the ALJ's articulation of her step two finding but fails to identify a reversible error in the ALJ's analysis. For instance, Rachel faults the ALJ for giving the psychological test results from the internal consultative examination greater weight than the psychological consultative examination. Doc. [20] at 9. Rachel points out that the psychological consultative examination showed that Rachel had a marked impairment in concentration, whereas the internal medicine consultative examination "included only a 'mini' mental status examination, without even any mention of functional capabilities in concentration."

*Id.* Rachel likewise directs the Court to the internal medicine consultative examiner's reference to a psychological evaluation "for a more complete mental status examination." *Id.* While Rachel's reading of these documents may be correct, her argument concedes that the ALJ did consider the psychological consultative examination showing a marked impairment in Rachel's concentration. Rachel, further, has not shown that the ALJ misstated the record or otherwise erred in assessing the consultative examinations. Rachel's argument, then, boils down to a disagreement about how the evidence should have been weighed, and that is no reason to overturn the ALJ's decision. *Burmester*, 920 F.3d at 510.

In a similar vein, Rachel attacks the ALJ's evaluation of Rachel's mental status examinations. Doc. [20] at 9. According to Rachel, the ALJ "suggested that all mental status examinations in the record were normal, and cited (twice) to a result from 'informal' testing with a neurologist, and to three conclusory notations of normal mental status in records devoted to Plaintiff's asthma symptoms." *Id.* As an initial matter, the ALJ did not suggest that all of Rachel's mental health examinations were normal. Rather, the ALJ stated that Rachel "consistently had normal mental status examinations over the course of the relevant period." (R. 19).[3] While the ALJ's language and citation to the record could have been more precise, the ALJ was correct. *See id.* at 312-13, 500-02, 517-18, 951, 990, 992, 994. That is, Rachel's mental status examinations were regularly normal, and Rachel has not pointed to any abnormal mental health status examinations that were either missed or ignored by the ALJ. Instead, Rachel's objection appears directed at the superior weight given to the normal mental status examinations over the psychological consultative examination. But this Court may not "reweigh evidence, resolve

---

[3] The ALJ further discussed mental health treatment records indicating psychiatric symptoms, *see id.* at 19, so the Court does not read the ALJ's decision as "suggest[ing] that all mental status examinations in the record were normal[.]" Doc. [20] at 9.

conflicts, decide questions of credibility, or substitute [its] judgment for that of the" ALJ, *Burmester*, 920 F.3d at 510, so Rachel's argument falls short.

The Court likewise cannot reweigh Rachel's adult function report, in which Rachel stated she finishes what she starts. (*See* R. 244). Rachel claims that the ALJ mischaracterized her statement in that regard, and that what she really said was "that her ability to talk, complete tasks, concentrate, and understand are impaired." Doc. [20] at 9. However, Rachel did check "yes," next to the question asking "Do you finish what you start? (For example, a conversation, chores, reading, watching a movie)," (R. 244), and the ALJ expressly considered her allegations, from the adult function report and her testimony, regarding her impacted attention span and inability to focus. *See id.* at 19, 22, 24. Rachel, therefore, has not shown that the ALJ misstated the record or ignored an entire line of evidence. *See Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) (citations omitted) ("Although an ALJ need not mention every snippet of evidence in the record, the ALJ must connect the evidence to the conclusion; in so doing, he may not ignore entire lines of contrary evidence."). While Rachel would have liked for the ALJ to have given more weight to the other statements she made in her adult function report, it is not for this Court to reweigh that evidence. *Burmester*, 920 F.3d at 510.

Rachel's remaining four mental RFC arguments are undeveloped and need not be considered. *See Heather M. v. Berryhill*, 384 F. Supp. 3d 928, 934-35 (N.D. Ill. 2019) (citations omitted). For the sake of completeness, however, the Court addresses each briefly below. First, Rachel chastises the ALJ for recycling her step two CPP analysis in her subsequent mental RFC discussion but cites to no case or regulation saying that an ALJ cannot reuse relevant analysis throughout her decision. Rachel then repeats her problems with the ALJ's step two CPP analysis, but again, Rachel's arguments simply amount to a disagreement with the ALJ's weighing of

evidence, and this Court will not reweigh the evidence. *Burmester*, 920 F.3d at 510. Second, Rachel accuses the ALJ of discounting her subjective symptom allegations because the ALJ found Rachel to be untruthful with no support or explanation of how the ALJ assumed Rachel was dishonest. By the Court's review, neither the ALJ's decision nor the hearing transcript suggested such a general distrust towards Rachel. In fact, the ALJ partially credited Rachel's allegations on her concentration deficits, obesity, and back pain, and crafted an RFC that reflected that partial credit. (*See* R. 19, 21, 24, 25). The ALJ further explained why she did not fully credit Rachel's allegations with citations to objective evidence in the record, so the Court sees no dismissal based on a belief that Rachel was untruthful. *See id.* at 23, 24. Third, Rachel alleges that the ALJ cherrypicked the evidence that supported her decision while ignoring related evidence that supports Rachel's disability claim, but, as discussed above, the ALJ's decision shows that the ALJ did not ignore the evidence highlighted by Rachel. The mere fact that the ALJ gave greater weight to records that are indicative of Rachel's ability to work, rather than her alleged disability, does not mean that the ALJ cherrypicked the record. *See Bertha M. v. Saul*, 395 F. Supp. 3d 963, 971 (N.D. Ill. 2019) (collecting cases) ("The ALJ didn't cherrypick; she engaged with both sides of the record and weighed the evidence in a different way than plaintiff would have liked."). Fourth and finally, Rachel insists, without any citation or support, that the ALJ's RFC failed to account for what Rachel would be capable of doing on a full time basis. The Court does not see any evidence in the record indicating that the ALJ failed to account for Rachel's ability to conduct fulltime work. Thus, Rachel's remaining arguments do not provide a reason to overturn the ALJ's decision.[4]

---

[4] In her reply brief, Rachel asserts that her mental RFC argument involved the ALJ's "failure to consider all of Plaintiff's limitations, *in combination* . . . no matter what the source or combined sources of the deficits." Doc. [27] at 3 (emphasis original). However, in neither brief, does Rachel articulate how the ALJ failed to consider the combination of her impairments. In any event, the Court finds, as discussed further below, that the ALJ did consider the combination of Rachel's impairments. (*See* R. 21, 22, 24, 25). That consideration included the purported concentration and attention problems arising from Rachel's

In sum, the ALJ's conclusion that Rachel suffered from a mild CPP limitation is supported by substantial evidence. Rachel disagrees with the ALJ's mild CPP finding, with her weighing of the evidence, and with the language the ALJ used to describe certain records. Yet, a claimant's disagreement with the outcome or weighing of the evidence does not provide cause to overturn an ALJ's decision. The ALJ's articulation, moreover, need not be perfect. *Buchholtz v. Barnhart*, 98 F. App'x 540, 544 (7th Cir. 2004) (citations omitted). It just needs to be supported by substantial evidence, which is "more than a mere scintilla." *Biestek*, 139 S. Ct. at 1154. The ALJ's mild CPP finding meets that low threshold here.

One more mental RFC issue warrants brief discussion. While Rachel's arguments focus on the ALJ's step two, mild CPP finding, the topic heading suggests a problem with the ALJ's failure to include mental limitations in the RFC. However, because Rachel does not explain what further limitations would be appropriate, any purported error in Rachel's mental RFC assessment would be harmless. In *Jozefyk v. Berryhill*, the Seventh Circuit held that any mental RFC assessment flaw by the ALJ in that case was harmless, in part, because it was "unclear what kinds of work restrictions might address [the claimant's] limitations in concentration, persistence, or pace," due to the fact that the claimant had not hypothesized any. 923 F.3d 492, 498 (7th Cir. 2019). The *Jozefyk* court further supported its harmless error analysis with the observation that the claimant did not cite any evidence showing that his mental deficits kept him from performing work as confined by the ALJ's mental RFC. *Id.* So too here, Rachel has not explained what additional limitations should have been imposed, so any error in the ALJ's mental RFC analysis was thus harmless. *See also Saunders v. Saul*, 777 F. App'x 821, 825 (7th Cir. 2019)

---

medication side effects. *Id.* at 22, 24, 25. Contrary to Rachel's position, then, the ALJ did not ignore Rachel's CPP allegations simply because they were caused by medication side effects, rather than depression or anxiety.

(upholding RFC where claimant suggested no "better way to capture the idea behind limitations in concentration, persistence, and pace and apply those problems to job requirements"); *Dudley v. Berryhill*, 773 F. App'x 838, 842 (7th Cir. 2019) ("Critically, Dudley did not identify any limitations that the ALJ omitted and should have included in the hypothetical question.").[5]

## B.     Effect of Obesity on Other Limitations

Rachel next argues that the ALJ failed to properly accommodate the effects of Rachel's obesity on her physical limitations. Doc. [20] at 11.  "[W]hile obesity is no longer a standalone disabling impairment, the ALJ must still consider its impact when evaluating the severity of other impairments." *Stephens v. Berryhill*, 888 F.3d 323, 328 (7th Cir. 2018) (citation omitted); *Hernandez v. Astrue*, 277 F. App'x 617, 623-24 (7th Cir. 2008) (citations omitted) (ALJ must "consider the exacerbating effects of a claimant's obesity on her underlying conditions . . . when arriving at a claimant's RFC.").  That is because "[t]he combined effects of obesity with another impairment(s) may be greater than the effects of each of the impairments considered separately." SSR 19-2p (rescinding and replacing SSR 02-1p), 2019 WL 2374244, at *4 (May 20, 2019); *see also Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("It is one thing to have a bad knee; it is another thing to have a bad knee supporting a body mass index in excess of 40.").

In this case, the ALJ's decision makes clear that the ALJ did consider the impact of Rachel's obesity, both singly, and in combination with other impairments.  The ALJ initially found "morbid obesity" to be one of Rachel's severe impairments. (R. 18).  The ALJ then considered whether Rachel's obesity, either singly or in combination with another impairment, met the

---

[5] The Court additionally observes that the ALJ did include a specific limitation in the RFC to account for Rachel's medication side effects: "To account for limitation the claimant may have as a side effect of her medication, the claimant should avoid concentrated exposure to activities involving unprotected heights and being around moving and hazardous machinery." (R. 25).  As a result, Rachel's topic heading that the ALJ failed to "account for any of Plaintiff's documented non-exertional limitations," Doc. [20] at 8, is not accurate.

requirements of a listing. *Id.* at 21. The ALJ found that Rachel's obesity did not lead to a listing being met because Rachel could ambulate effectively, and because Rachel's other listed severe impairments did not meet the severity of a listing level, even though the ALJ found that those impairments were indeed "worsened by obesity." *Id.* In her RFC discussion, the ALJ discussed the definition of obesity and reviewed Rachel's BMI measurements, her medical providers' obesity diagnoses, and the advice Rachel received to lose weight through diet and exercise. *Id.* at 22. The ALJ also acknowledged that Rachel's obesity "continues to be a complicating factor in both her back pain and difficulty breathing," and discussed a medical record concerning the combination of Rachel's asthma and obesity. *Id.* at 24. Perhaps most importantly, the ALJ limited Rachel to sedentary work in light of Rachel's spine issues "in conjunction with the claimant's obesity." *Id.* at 24. As the ALJ explained, "[t]o account for the claimant's limitations from her degenerative disc disease as compounded by her morbid obesity, the undersigned has limited the claimant to sedentary work with additional postural limitations." *Id.* at 25. The ALJ therefore fulfilled her duty of "consider[ing] the exacerbating effects of a claimant's obesity on her underlying conditions" in crafting Rachel's RFC. *Hernandez v. Astrue*, 277 F. App'x at 623-24.

At the outset, Rachel characterizes the ALJ's listing analysis conclusion that Rachel can ambulate effectively as "dubious." Doc. [20] at 11-12. According to Rachel, the ALJ dismissed her documented problems with ambulation due to Rachel's sometimes normal gait, as well as the fact that her cane was not prescribed by a physician. *Id.* at 12. Rachel is incorrect. The ALJ acknowledged that Rachel had an ambulation problem but concluded that "the evidence does not show that the claimant is unable to ambulate effectively as defined in [the regulations]." (R. 20). The ALJ's conclusion was reasonable in light of the definition of ineffective ambulation set out in the regulations. Specifically, 20 C.F.R. § 404, Subpt. P, App. 1, 1.00 B(2)(b) (2018) provides that

"[i]neffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." The ALJ's conclusion that Rachel did not meet the regulatory definition of ineffective ambulation was thus supported by substantial evidence, as the ALJ pointed to evidence that a reasonable mind could accept as adequate to support the conclusion, including record evidence showing: that Rachel had normal gait on many occasions, that she was using a cane that was not prescribed by a doctor, and that by Rachel's own self-reports to treaters, she only used the cane periodically. (R. 20).[6]

Rachel's comparison of this case to *Browning v. Colvin* falls short. In *Browning*, the ALJ merely acknowledged that the claimant's obesity was a factor in her leg pain but failed to discuss the impact the claimant's obesity would have on her ability to do sedentary work. 766 F.3d 702, 707 (7th Cir. 2014). Here, as discussed above, the ALJ considered and discussed the impact of Rachel's obesity throughout her decision but did not find the severity of her obesity, nor her purported inability to sit, to be supported by the longitudinal record. (R. 18, 21, 22, 24, 25). So, while the ALJ did not explicitly discuss Rachel's obesity in the context of sitting, the Court can nevertheless trace the ALJ's reasoning, and the Court is confident that the ALJ adequately considered Rachel's obesity in this case. The ALJ's RFC was further supported by the opinions of the state agency physicians, who found that Rachel suffered from the severe impairment of obesity but found that she could nevertheless perform sedentary work. *See Prochaska v. Barnhart*,

---

[6] Rachel additionally attacks the ALJ's effective ambulation conclusion by emphasizing evidence already weighed by the ALJ, including treatment records concerning Rachel's breathing and back problems, her consultative examination with Dr. Palacci, Dr. Candido's purported treating physician opinion (discussed further below), and Rachel's testimony. See Doc. [20] at 12; (R. 20, 22, 24). But again, Rachel cannot show that the ALJ ignored an entire line of evidence or misstated the record, only that she disagrees with the way the ALJ weighed the evidence. The Court cannot reverse the ALJ's decision on that basis. *Burmester*, 920 F.3d at 510.

454 F.3d 731, 736-37 (7th Cir. 2006); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004); *Hernandez*, 277 F. App'x at 624. Thus, the ALJ's obesity analysis here rests on stronger grounds than the ALJ's analysis did in *Browning*.

Rachel's following argument is that while "[a]cknowledging that Plaintiff's obesity indeed complicates her back pain and breathing difficulties," the ALJ "leapt to the unsupportable and unexplained conclusion that Plaintiff's symptoms are . . . not as severe as alleged." Doc. [20] at 14. This obesity argument does not advance Rachel's position. Rachel's assertion first concedes that the ALJ considered the impact that Rachel's obesity had on her back and breathing impairments, which undermines Rachel's overall complaint about the ALJ's failure to consider the impact of Rachel's obesity on her other impairments. The ALJ's discounting of Rachel's obesity allegations, moreover, was supported and explained. In explaining her finding that Rachel's obesity allegations were not severe as alleged, the ALJ referred to her earlier subjective symptom analysis. (R. 24). That analysis discussed medical records reflecting pain improvement after the placement of the spinal cord stimulator implant, the overall control of Rachel's asthma with medication, and Rachel's self-reports to doctors about her sleep habits and increased activity. *Id.* at 23. The Court's review of an ALJ's subjective symptom analysis is deferential; the Court will only overturn the ALJ's credibility determination if it is "patently wrong." *Burmester*, 920 F.3d at 510 (internal quotation marks and citation omitted). Rachel has failed to show that the ALJ's subjective symptom determination was erroneous here.

## C.     Rejection of Treating Pain Specialist

Rachel's final argument is that the ALJ improperly rejected the opinion of Rachel's treating pain specialist, Dr. Candido. Doc. [20] at 14. Generally, the regulations favor medical opinions from treating physicians, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring

a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2). The opinion of a treating physician is therefore entitled to controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *Kaminski v. Berryhill*, 894 F.3d 870, 874, 874 n.1 (7th Cir. 2018) (for claims filed before March 27, 2017, an ALJ "should give controlling weight to the treating physician's opinion as long as it is supported by medical findings and consistent with substantial evidence in the record.").

Additionally, an ALJ must "offer good reasons for discounting a treating physician's opinion." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotation marks and citations omitted); *see also Walker v. Berryhill*, 900 F.3d 479, 485 (7th Cir. 2018). Those reasons must be "supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) (citation omitted). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (citations omitted); *see* 20 C.F.R. § 404.1527(c).

In this case, the ALJ stated that she considered the opinion of Dr. Candido but gave the opinion partial weight. (R. 24). The ALJ reasoned that some of Dr. Candido's opinions were not well-supported and were inconsistent with the record. *Id.* "Most significantly, his opinion that the claimant is limited to working only four hours per day . . . [is] unsupported within Dr. Candido's

assessment, the medical record, including the mild changes in the claimant's back and her controlled asthma[.]" *Id.* The ALJ further found Dr. Candido's conclusion that Rachel could not stand for more than five minutes to be inconsistent with the record, particularly with respect to the "mild findings shown in imaging of the claimant's back." *Id.*

The Court finds no treating physician error here for two reasons. First, a closer look at the opinion reveals that the opinion discussed is not a treating physician's opinion at all. Rather, the opinion is a physical therapist's evaluation conducted at the behest of Dr. Candido. (R. 38, 996, 1002). There is no evidence that Dr. Candido created the record, or otherwise endorsed the findings of the physical therapist's evaluation. *See id.* at 996, 1002. A physical therapist is not considered an "acceptable medical source" under the regulations, and the opinion of a physical therapist is not entitled to any special weight. SSR 06–03p, 2006 WL 2263437, at *2 (Aug. 9, 2006); *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). As a result, the treating physician rules do not apply to the opinion in question. *See* 20 C.F.R. § 1527(a)(1).

Second, even if the opinion had been from a treating physician, the ALJ's weighing of the opinion was sufficient. *See Stocks v. Saul*, 844 F. App'x 888, 892 (7th Cir. 2021) (citations omitted). As the ALJ explained, the underlying assessment did not support the finding that Rachel could only work four hours per day, and the record, which included Rachel's MRI and her controlled asthma, was inconsistent with that finding. (R. 24). Also, in light of the "mild findings shown in imaging of the claimant's back,"[7] the ALJ discounted the conclusion that Rachel could not stand for more than five minutes. *Id.* The ALJ thus, contrary to Rachel's position, *see* Doc. [20]

---

[7] Rachel argues that mild lumbar MRI findings from early in the relevant time period would not be instructive as to how Rachel's obesity exacerbates her spinal impairment and asthma. Doc. [20] at 14. Rachel's objection, again, is that the ALJ gave too much weight to a record that Rachel finds insubstantial. But it is not for this Court to reweigh the evidence, and Rachel's MRI assertion does not provide a basis for the Court to overturn the ALJ's decision. *Burmester*, 920 F.3d at 510.

at 14, explained her assessment of the opinion and explicitly discussed at least two of the treating physician factors. *See* 20 C.F.R. § 404.1527(c)(3) ("Supportability. The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."); 20 C.F.R. § 404.1527(c)(4) ("Consistency. Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). Consequently, the Court finds no treating physician error in this case.

Rachel attacks the ALJ's assignment of significant weight to the opinions of the state agency physicians as well, arguing that the ALJ "offered only unsupported and conclusory statements" in support of that assignment. Doc. [20] at 15. The Court disagrees. The ALJ explained that she gave significant weight to the state agency physicians' opinions because she found the opinions "consistent with the longitudinal medical record." (R. 24). The ALJ elaborated that the medical record, "including the imaging of the claimant's spine and her difficulty walking prolonged distances, in conjunction with the claimant's obesity, indicate that the claimant is limited to sedentary work." *Id.* The ALJ accordingly gave the state agency physicians' opinions that Rachel was limited to sedentary work with additional postural and environmental limitations, significant weight. *Id.* While the ALJ could have said more, the ALJ said enough to build the requisite accurate and logical bridge from the evidence to her decision to give the state agency physicians significant weight. *Steele*, 290 F.3d at 941. The Court sees no error in that weighing.

Rachel finally attacks the weighing of the state agency psychological consultants. Doc. [20] at 15. She contends that it was troubling for the ALJ to rely on the opinions of the state agency physicians who evaluated Rachel's mental abilities because the ALJ mischaracterized the

record in stating that "there were largely normal mental status examinations." *Id.*[8]  Rachel also criticizes the ALJ's reliance on the absence of psychiatric hospitalizations and Rachel's daily activities to "justify her finding of no non-exertional limitations." *Id.*  Rachel avers that the ALJ thereby demonstrated a misunderstanding of mental illness and of how an ALJ should interpret an individual's ability to sustain basic daily activities. *Id.* (citing *Voight v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2014); *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)).  While Rachel did not fully brief this subjective symptom analysis assertion, the Court addresses the ALJ's credibility determination briefly.

The Court will overturn an ALJ's evaluation of a claimant's subjective symptom allegations only if it is "patently wrong." *Burmester*, 920 F.3d at 510 (internal quotation marks and citation omitted).  An ALJ must justify her evaluation with "specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citation omitted); *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (citation omitted) (patently wrong "means that the decision lacks any explanation or support.").  When assessing a claimant's subjective symptom allegations, an ALJ must consider several factors, including the objective medical evidence, the claimant's daily activities, his level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5, *7-8 (Oct. 25, 2017).  Ultimately, "the ALJ must explain her [subjective symptom evaluation] in such a way that allows [the Court] to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Murphy*, 759 F.3d at 816 (internal quotation marks and citation omitted).  And "[n]ot all of the ALJ's reasons must be valid

---

[8] As discussed above, the Court does not find that the ALJ mischaracterized the record in her discussion of Rachel's mental status examinations.

as long as enough of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722-23 (7th Cir. 2009) (citations omitted).

Here, the ALJ provided a host of legitimate reasons for discounting Rachel's subjective symptom allegations, including objective medical evidence, Rachel's admitted daily activities, her level of pain, her medication, and her course of treatment. (*See* R. 19, 24, 25); 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5, *7-8. Rachel claims, without support, that the ALJ failed to recognize the critical differences between activities of daily living and a full-time job. Doc. [20] at 15 (citing *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)). The ALJ, however, did not equate Rachel's daily activities to her ability to do full-time work. Instead, she assessed Rachel's daily activities in the context of determining whether her symptoms were as severe as she alleged and whether the record evidence supported the opinions of the state agency consultants. *See Densow v. Saul*, No. 20-2327, 2021 WL 2396239, at *3 (7th Cir. June 11, 2021). And while the Court generally agrees that an absence of psychiatric hospitalization does not mean that a claimant can sustain full-time work, despite a mental impairment, *see Voight*, 781 F.3d at 878, the ALJ provided plenty of valid reasons for discounting Rachel's mental health allegations, such as her consistently normal mental status examinations, her failure to pursue mental health treatment at all during the relevant time period, her internal medicine consultative examination, and her self-reported ability to finish what she starts. (*See* R. 19, 24). As a result, the Court does not find the ALJ's subjective symptom determination to be patently wrong. *Halsell*, 357 F. App'x at 722-23.

In conclusion, Rachel has failed to raise a reversible error in the ALJ's decision. She disagrees with the ALJ's CPP finding, her evaluation of evidence concerning Rachel's obesity, and her weighing of Rachel's September 2018 functional capacity evaluation. Yet, the record

shows that the ALJ considered and weighed the evidence that Rachel touts now. As often is the case in social security cases, the record here contained "conflicting evidence [that] could have supported reasonable decisions to grant benefits or to deny them." *Chambers v. Saul*, No. 20-2597, 2021 WL 2556588, at *1 (7th Cir. June 22, 2021). Under the deferential substantial evidence standard of review that controls this Court's review, an ALJ's decision cannot be overturned simply because the Court might have weighed the evidence differently. Here, the low threshold for substantial evidence was met, as a "reasonable mind might accept" the ALJ's cited evidence in this case as "adequate to support" her conclusions. *Biestek*, 139 S. Ct. at 1154.

## **CONCLUSION**

For the reasons set forth above, the Commissioner's motion [25] is granted, and the ALJ's decision is affirmed.

**SO ORDERED.**

Dated:  July 13, 2021

_____
Sunil R. Harjani
United States Magistrate Judge